**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

GARRY F.,

                **Plaintiff,**

     v.

                                     **Civil Action 2:21-cv-923
                                     Judge Algenon L. Marbley
                                     Magistrate Judge Jolson**

COMMISSIONER OF
SOCIAL SECURITY,

                **Defendant.**

**REPORT AND RECOMMENDATION**

Plaintiff, Garry F., brings this action under 42 U.S.C. § 405(g) seeking review of a final

decision of the Commissioner of Social Security ("Commissioner") denying his application for

Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI").   For the reasons

set forth below, it is **RECOMMENDED** that the Court **OVERRULE** Plaintiff's Statement of

Errors (Doc. 11) and **AFFIRM** the Commissioner's decision.

**I.      BACKGROUND**

On June 4, 2015, Plaintiff protectively filed applications for DIB and SSI alleging disability

beginning April 14, 2014.  (Tr. 228–38).  After his applications were denied both initially and on

reconsideration, ALJ Jason C. Earnhart held a hearing on March 22, 2018.  (Tr. 31–61).  ALJ

Earnhart denied Plaintiff's applications in a written decision on July 18, 2018.  (Tr. 9–30).  When

the Appeals Council denied review, that denial became the final decision of the Commissioner.  (Tr.

1–6).

Thereafter, on May 22, 2019, Plaintiff appealed the final decision of the Commissioner in

this Court.  *See Farrell v. Comm'r of Soc. Sec.*, No. 2:19-cv-2127 (S.D. Ohio).  This Court

remanded the case to the Commissioner.  (Tr. 683–99).  The Appeals Council then issued a remand

order, in which it noted Plaintiff had filed a subsequent claim for SSI on April 16, 2019.  (Tr. 700–04).   It therefore directed the ALJ to consolidate the claims files and issue a decision on the consolidated claims pursuant to 20 CFR 416.1452 and HALLEX I-1-10-10.  (*Id.*).  A telephone hearing before ALJ Deborah F. Sanders ("the ALJ") was held on July 24, 2020.  (Tr. 600–43). Plaintiff's applications were denied again on November 4, 2020. (Tr. 577–99).  Plaintiff did not request review by the Appeals Council, opting instead to file the instant suit in this Court on March 4, 2021. (Doc. 1).

The Commissioner filed the administrative record on July 28, 2021 (Doc. 10).  The matter has been briefed and is ripe for consideration.  (Docs. 11, 12, 17).

### A.      Relevant Hearing Testimony

The ALJ summarized the testimony from Plaintiff's most recent hearing:

> [Plaintiff] testified, or elsewhere indicated an inability to work primarily due to his mental health impairments. He testified that his last job ended because his anxiety prevented him from reliable and reasonable job performance. [Plaintiff] stated that he was frequently calling off work. He indicated that he feels pressure that everything has to be perfect and he "puts a lot of weight" on things. [Plaintiff] stated that he uses meditation and self-talk to get through performing small tasks such as cutting the grass. [Plaintiff] testified that on a typical day, he takes his medications after he wakes up and generally watches television for a couple of hours. He performs odd jobs for his brother and his wife, with whom he lives part-time. [Plaintiff] stated that he has difficulty making decisions and is better if has nothing to do and can relax and keep his mind clear. He testified that he has to talk himself into completing a task. He stated that his medications do help, but his mental health provider has been making adjustments. [Plaintiff] testified that he has panic attacks five times per week. He stated that he has difficulty being in public as he is afraid someone will hurt him. [Plaintiff] also endorsed frequent nightmare, which he described as paralyzing. He stated that just thinking about the pressures of a job cause him to have a panic attack. [Plaintiff] also testified to some problems with his knees and ankles, but is reluctant to seek medical treatment because of his mental state.

(Tr. 586).

B.       **Relevant Medical Evidence**

The ALJ also usefully summarized Plaintiff's medical records and symptoms related to his

mental health impairments during the relevant period:

> The record is significant for [Plaintiff]'s history of mental health issues with
> treatment for anxiety, PTSD and OCD. [Plaintiff] has been noted to exhibit signs
> of significant anxiety, such as shaking his legs, rocking back and forth and rubbing
> his head or his hands, but was often able to calm himself upon being reminded to
> take a moment and take a few breaths (Exhibits 22F/29, 35; 38F/3). Despite such
> anxious behavior, [Plaintiff] is generally able to remain alert, focused and actively
> participate in psycho/behavioral therapy sessions while providing positive
> feedback. Increases in [Plaintiff]'s anxiety [has] been shown to coincide with
> psychosocial stressors involving [Plaintiff]'s living situation and familial issues
> (Exhibits 12F/6; 22F/2, 31, 33, 35; 38F/3; 40F/3-4). [Plaintiff]'s mental status
> examinations have revealed anxious mood, but logical and goal-directed thought
> processes, with fair insight and judgment. At times, [Plaintiff] exhibited pressured
> speech without signs of or symptoms of a formal thought disorder. He has presented
> with variable eye contact, but is generally described as interactive and cooperative
> (Exhibits 5F; 7F; 8F; 22F; 33F). Treatment notes reflect [Plaintiff]'s reports of
> ongoing anxiety, but also [ ] his good response to medication management and
> coping skills development. Throughout, [Plaintiff] has indicated making at least
> some progress toward his stated goal of dealing with anxiety (Exhibits 7F, 11F,
> 17F, 18F, 22F, 38F, 40F, 45F). Counseling notes reflect [Plaintiff]'s ability to
> recognize supportive people and positive things in his life. [Plaintiff] acknowledged
> feeling useful when helping his brother children and the ability to use calming and
> healthy coping strategies in dealing with symptoms of anxiety (Exhibits 22F/19,
> 35, 45F/1). Overall, while the record documents [Plaintiff]'s chronic mental health
> symptoms, they appear to be stable with treatment including medication
> management and therapy (Exhibit 27F/9, 10, 22). Further, aside from emergency
> room visits seeking Xanax refills, the record does not contain emergency treatment
> for periods of acute symptom exacerbation or inpatient hospitalization for periods
> of mental instability. The record indicates that [Plaintiff] has a valid driver's license
> and is capable of operating a motor vehicle. Additionally, there is no indication that
> [Plaintiff] is incapable independently caring for his personal needs or carrying out
> general activities of daily living. In fact, [Plaintiff] testified that he helped his
> previous landlord with odd jobs and currently assists his brother with household
> projects and daily chores. Thus, I find that the mental residual functional capacity
> assessed herein appropriately considers [Plaintiff]'s allegations in conjunction with
> the medical evidence, as discussed above in the "B" criteria discussion and overall
> evidence discussion. Accordingly, [Plaintiff]'s mental health impairments do
> warrant work-related limitations. Specifically, given the nature and extent of
> [Plaintiff]'s mental health symptoms, he is limited to simple, routine tasks with no
> fast production rate pace and no strict production quotas; occasional interaction
> with co-workers, but no tandem or shared tasks and no requirement to resolve

conflicts or persuade others; occasional interaction with supervisors, but no over-the-shoulder supervision; no interaction with the public and [Plaintiff] is able to adapt to a relatively static work environment with occasional changes to job duties.

(Tr. 586–87).

### C.        The ALJ's Decision

The ALJ found that Plaintiff meets the insured status requirement through September 30, 2017, and has not engaged in substantial gainful employment since April 14, 2014, the alleged onset date.  (Tr. 582).  The ALJ determined that Plaintiff has the following severe impairments: right ankle degenerative joint disease and impingement status-post torn ligament surgical repair; obesity; anxiety disorder with panic attacks and agoraphobia; obsessive compulsive disorder (OCD) and post-traumatic stress disorder (PTSD).  (Tr. 582–83). The ALJ, however, found that none of Plaintiff's impairments, either singly or in combination, meets or medically equals a listed impairment.  (Tr. 583).

As to Plaintiff's residual functional capacity ("RFC"), the ALJ opined:

[Plaintiff] has the residual functional capacity to perform medium work as defined in 20 CFR 404.1567(c) and 416.967(c) except frequent climbing ramps and stairs; never climbing ladders, ropes or scaffolds; frequent balancing and stooping; occasional crouching and crawling and occasional work around dangerous machinery and unprotected heights. [Plaintiff] is further limited to simple, routine tasks with no fast production rate pace and no strict production quotas; occasional interaction with co-workers, but no tandem or shared tasks and no requirement to resolve conflicts or persuade others; occasional interaction with supervisors, but no over-the-shoulder supervision; no interaction with the public and [Plaintiff] is able to adapt to a relatively static work environment with occasional changes to job duties.

(Tr. 585).

Upon "careful consideration of the evidence," the ALJ found that Plaintiff's "statements concerning the intensity, persistence and limiting effects of [his] symptoms are not entirely consistent with the medical evidence."  (Tr. 586).

The ALJ determined that Plaintiff was unable to perform his past relevant work as an electrician and electrician supervisor. (Tr. 590). Relying on the vocational expert's testimony, the ALJ concluded that Plaintiff could perform jobs that exist in significant numbers in the national economy, such as a linen room attendant and cook helper. (Tr. 590–91). She therefore concluded that Plaintiff "has not been under a disability, as defined in the Social Security Act, from April 14, 2014, through the date of this decision (20 CFR 404.1520(g) and 416.920(g))." (Tr. 591).

## II.     STANDARD OF REVIEW

The Court's review "is limited to determining whether the Commissioner's decision is supported by substantial evidence and was made pursuant to proper legal standards." *Winn v. Comm'r of Soc. Sec.*, 615 F. App'x 315, 320 (6th Cir. 2015); *see* 42 U.S.C. § 405(g). "[S]ubstantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (quoting *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)). The Commissioner's findings of fact must also be based upon the record as a whole. *Harris v. Heckler*, 756 F.2d 431, 435 (6th Cir. 1985). To this end, the Court must "take into account whatever in the record fairly detracts from [the] weight" of the Commissioner's decision. *Rhodes v. Comm'r of Soc. Sec.*, No. 2:13-cv-1147, 2015 WL 4881574, at *2 (S.D. Ohio Aug. 17, 2015).

## III.    DISCUSSION

In his Statement of Errors, Plaintiff contends that: (1) the ALJ failed to properly evaluate the opinions provided by Ms. Baker and Ms. Niazi, the treating mental health providers; and (2) 42 U.S.C. § 902(a)(3), which limits the power of the President of the United States to remove the Commissioner of Social Security without cause, violates the separation of powers doctrine, and

thus, the Commissioner's delegation of power to the ALJ who adjudicated his claim was defective. (Docs. 11 and 17).

The Commissioner counters that the ALJ reasonably evaluated the opinions of Ms. Baker and Ms. Niazi.  The Commissioner further counters that Plaintiff's separation of powers argument does not entitle him to a rehearing of his disability claim, and, alternatively, should be denied under the harmless error doctrine, the *de facto* officer doctrine, the rule of necessity, and for broad prudential considerations.  (Doc. 12).

### A.     Evaluation of Ms. Baker's and Ms. Niazi's Opinions

Plaintiff's therapist, Ms. Baker, and his nurse practitioner, Ms. Niazi, are not "acceptable medical sources" pursuant to Social Security Ruling SSR 06-03P (the "Ruling"); instead they are "other sources."  *See* SSR 06-03P (S.S.A.), 2006 WL 2329939, at *2. "Other sources" cannot establish the existence of a medically determinable impairment but "may provide insight into the severity of the impairment and how it affects the individual's ability to function.  *Id*. at *2.  The Ruling notes that "[w]ith the growth of managed health care in recent years and the emphasis on containing medical costs, medical sources who are not 'acceptable medical sources,' such as nurse practitioners . . . have increasingly assumed a greater percentage of the treatment and evaluation functions handled primarily by physicians and psychologists."  *Id*. at *3.  Such opinions are "important and should be evaluated on key issues such as impairment severity and functional effects, along with the other evidence in the file." *Id*. at *4.  Accordingly, the Ruling explains that opinions from non-medical sources who have seen the claimant in their professional capacity should be evaluated by using the applicable factors, including how long the source has known the individual, how consistent the opinion is with other evidence, and how well the source explains the opinion.  *Id*. at *4–5.  ALJs may also consider the degree to which the source presents relevant

6

evidence to support the opinion, whether the source has a particular expertise, and "any other factor supporting or refuting the opinion." *Davila v. Comm'r of Soc. Sec.*, 993 F. Supp. 2d 737, 757–58 (N.D. Ohio 2014) (internal quotation marks and citations omitted).

Plaintiff maintains that the ALJ failed to "provide a reasonable explanation, supported by substantial evidence, as to why [Ms. Baker's and Ms. Niazi's] opinions were being rejected." (Doc. 11 at 8). The Undersigned considers the ALJ's evaluation of each opinion in turn.

When discussing Ms. Baker's opinion evidence, the ALJ found,

> I considered the Mental Work Capacity Evaluation, dated August 15, 2017, completed by Lori Baker, LPC (Exhibit 9F). Ms. Baker noted that she had been treating [Plaintiff] since December 2016, roughly eight months. She completed a functional check-list indicating moderate to extreme concentration, social and adaptation limitations. Such significant limitations are not entirely supported by her own treatment notes, which indicate [Plaintiff]'s motivation and dedication to counseling, as well as his generally good insight, fair judgment, intact memory and appropriate appearance (Exhibits 12F). Ms. Baker's opinion is likewise, not consistent with the record as a whole that reflects [Plaintiff] as routinely cooperative and fully oriented. Moreover, at the time she completed the Evaluation, Ms. Baker had been treating [Plaintiff] for less than a year. Thus, her opinion does not reflect a longitudinal perspective of [Plaintiff]'s condition. Moreover, Ms. Baker, a licensed professional counselor, is not an acceptable medical source as defined by the Regulations. Rather, she is considered an "other source" and her opinion is not entitled to controlling weight as evidence from "other sources" is considered only to the extent that they help understanding how an impairment affects the ability to work (20 CFR 404.1502, 404.1527(d) and 416.927(d)). Accordingly, overall, I give Ms. Baker's opinion little weight.

(Tr. 588).

First, the ALJ noted that Ms. Baker's opined limitations were "not entirely supported by her own treatment notes[.]" (*Id.*). The ALJ miscited those treatment notes as Exhibit 12F, though they appear at Exhibit 11F—regardless, the ALJ's description of the treatment notes is consistent with the proper Exhibit. Indeed, as identified by the ALJ, Ms. Baker noted that Plaintiff was "motivated to work on his issues and [was] open to trying new techniques." (Tr. 490). Particularly, Plaintiff was working to "[l]earn coping skills for dealing with PTSD [symptoms] and be able to deal with

7

people without getting angry and work on [his] concentration levels." (*Id.*). And though Ms. Baker did note moderate or severe findings in areas like restlessness, anxious mood, and attention and concentration, she also noted generally normal or mild findings in Plaintiff's appearance, memory, thought content, and perception. (Tr. 488–89).

Second, the ALJ found Ms. Baker's opined moderate to extreme limitations in concentration, social, and adaptation limitations inconsistent with the record as a whole. This is adequately explained by the ALJ's earlier reasoning supporting her findings that Plaintiff was only moderately limited in the related broad areas of function: interacting with others; concentrating, persisting, or maintaining pace; and adapting or managing oneself." (Tr. 584). Significantly, regarding adaptation, the ALJ found that though Plaintiff "often appears anxious, he is generally cooperative, friendly, and interactive with his treatment providers." (*Id.* (citing Tr. 353, 358, 364, 403, 407, 412, 520, 892, 1034–36, 1185)). Further, though at times Plaintiff was noted to have fair or unkempt grooming, he was generally described as well-dressed and well-groomed. (*Id.* (citing Tr. 407, 412, 488, 520, 541, 558, 566, 850, 856, 1034, 1036, 1185).

Regarding interaction with others, the ALJ acknowledged that though living with family was at times a stressor for Plaintiff, he did so without significant discord or conflict, and contributed to household chores. (*Id.* (citing Tr. 848 ("[Plaintff] reports that his family is now his support system. . . . [He] does help around the house and feels like he is contributing to the home in some way when he does this."), 865 (describing Plaintiff helping his brother with his lawn business), 867 (noting "difficult time" between Plaintiff and his father and brother, but Plaintiff helping them with yard work), 875 (describing Plaintiff's "feelings of being taken for granted by his brother"), 1272–73 (noting provider worked with Plaintiff "on setting boundaries and using I statements to express feelings to family"))). And with regard to concentration and persistence, though some examinations

8

showed "intermittent difficulties in concentration with much of his anxiety associated with running out of his Xanax, being unable to obtain Xanax, or being anxious about his Social Security hearing[,]" other portions of the record demonstrated Plaintiff had good attention and concentration. (*Id.* (citing Tr. 364, 378–92, 401–16, 442–44, 494, 848, 861)).

The ALJ continued to summarize relevant evidence of record in the RFC section of the opinion.  Notably, the ALJ found that "while the record documents the [Plaintiff's] chronic mental health symptoms, they appear to be stable with treatment including medication management and therapy."  (Tr. 587 (citing Tr. 1035, 1036 (psychiatric nurse notes detailing no changes to medication, no reported side effects, stable moods, and no further concerns))).   The ALJ further noted that "aside from emergency room visits seeking Xanax refills, the record does not contain emergency treatment for periods of acute symptom exacerbation or inpatient hospitalization for periods of mental instability."  (*Id.*).

Finally, the ALJ found it significant that Ms. Baker had been treating Plaintiff for less than a year, and thus her opinion did "not reflect a longitudinal perspective of [Plaintiff's] condition." (Tr. 588).  Plaintiff says this "seems to be inconsistent with the rest of the ALJ's evaluation[,]" because "the ALJ took no issue with the fact that the state agency doctors and Dr. Lace had no opportunity to personally examine or observe [Plaintiff]." (Doc. 11 at 13–14).  The Undersigned, however, does not find the ALJ's statement about Ms. Baker's treating time to be inconsistent with the evaluation of the other opinions.  The state agency physicians and Dr. Lace, the medical expert for Plaintiff's prior hearing, as non-examining sources, do not have a treatment history with Plaintiff.  Rather, their opinions were formed by medical records spanning years of Plaintiff's treatment among different providers, and thus reflect the "longitudinal perspective" the ALJ found that Ms. Baker, who formed her opinion only based on eight months of her own counseling of

Plaintiff, lacked.

At base, the ALJ properly explained how she evaluated Ms. Baker's opinion, and why she assigned it little weight: it was internally inconsistent, it was inconsistent with the overall record, and it was based upon a relatively brief treatment history.  And the Undersigned finds that the ALJ identified substantial evidence in the record to support her reasoning.

Next, the Undersigned turns to the ALJ's consideration of Ms. Niazi's opinion.     When discussing that opinion evidence, the ALJ found,

> I also considered the Mental Work Capacity Evaluation, dated October 6, 2017, completed by Maryam Niazi, psychiatric nurse practitioner (Exhibit 13F). Ms. Niazi completed a functional check-list indicating marked to extreme understanding and memory, concentration, social and adaptation limitations. Ms. Niazi's opinion does not cite any objective evidence or reference support from her own records. Moreover, she notes that severe depression, along with anxiety, is [Plaintiff]'s main psychological problem. However, the record reflects [Plaintiff] has either denied depression or indicated that any depression is under control (Exhibits 3F/2; 5F/19; 8F/7). Moreover, Ms. Niazi's own treatment notes often document [Plaintiff]'s easy to follow thought process, goal[-]oriented thought content, cooperative behavior, fair cognition, as well as his positive response to medication (Exhibits 14F, 15F, 19F, 26F, 27F, 33F). Such findings do not support the extreme limitations Ms. Niazi indicates in her Evaluation. Despite Ms. Niazi's indication that [Plaintiff] would lose at least an hour per day of productivity or show a pattern of missing four or more days of work per month due to his mental health impairments, there is not objective evidence to support such a supposition, a fact to which Dr. Lace also testified. Accordingly, despite Ms. Niazi's treating relationship with [Plaintiff], her opinion is not supported by or consistent with the evidence overall. Accordingly, I give her opinion little weight. Ms. Niazi also submitted statements indicating that [Plaintiff] "may not be able to function adequately in the workplace" and attending job preparedness training "may lead to exacerbation of symptoms and a decrease" in [Plaintiff]'s "overall wellbeing" (Exhibits 16F, 28F, 44F). These speculative statements do not express an opinion with respect to the most [Plaintiff] is capable of. Rather they offer a generalized statement without any specific discussion of [Plaintiff]'s symptoms or the objective support. Like Ms. Baker, Ms. Niazi is not considered an acceptable medical source and her opinion is not therefore, entitled to controlling weight (20 CFR 404.1502, 404.1527(d) and 416.927(d)). Thus, Ms. Niazi's opinions are given little weight.

(Tr. 589).

The ALJ clearly stated several reasons why she assigned Ms. Niazi's opinion "little weight."

10

(*Id.*).  First, the ALJ noted that the opinion was unpersuasive because it identified severe depression as one of Plaintiff's main psychological problems (Tr. 511), but that diagnosis was denied by Plaintiff or otherwise understood to be controlled or moderate in the record.  (Tr. 589 (citing Tr. 339 (provider noting Plaintiff stated a past history of depression that is "now under control"), 369 (provider noting Plaintiff "denied he struggles with depression or sadness anymore; however his PHQ-9 indicates that he has moderate depression"), 407 (provider noting Plaintiff "denies feeling depressed"))).  Second, the ALJ found that the opined limitations were not fully supported by Ms. Niazi's own treatment notes, which "document [Plaintiff]'s easy to follow thought process, goal[-]oriented thought content, cooperative behavior, fair cognition, as well as his positive response to medication." (*Id.* (citing 514–21, 522–49, 567–71, 1005–26, 1027–66, 1167–94)).  Third, the ALJ found the opinion was not supported by the overall record.  As detailed extensively above, the ALJ identified substantial evidence in the record to suggest that Plaintiff was only moderately limited in his functioning, making Ms. Niazi's opinion, which was full of extreme limitations, contrary to the ALJ's view of the record.  Accordingly, as with Ms. Baker's opinion, the ALJ sufficiently explained why she assigned Ms. Niazi's opinion little weight.  And the ALJ's reasoning is supported by substantial evidence.

In sum, the ALJ properly explained, using the applicable factors, her reasons for assigning the opinions of Ms. Baker and Ms. Niazi little weight.  The ALJ's explanation here is a far cry from that of the prior ALJ, whose "threadbare analysis" of the "other source" opinions warranted remand. *Farrell v. Comm'r of Soc. Sec.*, No. 2:19-cv-2127, 2020 WL 64011 at *7 (S.D. Ohio Jan. 7, 2020), *report and recommendation adopted*, No. 2:19-cv-2127, 2020 WL 470240 (S.D. Ohio Jan. 29, 2020).  Accordingly, the Undersigned finds Plaintiff's allegation of error is without merit.

**B.    Separation of Powers**

Plaintiff also contends that remand is required because a statute that provided tenure protection to the former Commissioner of Social Security, Andrew Saul, violated the separation of powers doctrine, and therefore, the decision to deny him benefits was made by individuals who lacked a proper delegation of power to make benefits determination.  This contention lacks merit.

1.    Plaintiff's Constitutional Claim is Procedurally Improper

As an initial matter, the claim is procedurally improper.  Plaintiff's Complaint does not include any Constitutional claims.  (Doc. 4).  Rule 8(a)(2) of the Federal Rules of Civil Procedure provides, however, that a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief."  Although a complaint need not provide "detailed factual allegations," it "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell v. Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). At a minimum, a complaint must "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Id*.   Here, the United States Supreme Court case upon which Plaintiff bases his Constitutional claim was decided on June 20, 2020.  Yet Plaintiff gave no notice, let alone fair notice, of his Constitutional claim in his March 05, 2021 Complaint. *See John R. v Comm'r of Soc. Sec.*, Case No. C20-6176-MLP, 2021 WL 5356719, *7 (W.D. Wash. Nov. 16, 2021) (finding that a plaintiff failed to comply with Rule 8 by failing to plead a separation of powers claim in complaint seeking judicial review of Commissioner's decision to deny benefits); *Shannon R. v. Comm'r of Soc. Sec.*, Case No. C21-5173, 2021 WL 5371394, at * 6–7 (Nov. 18, 2021) (same). For that reason, he failed to comply with Rule 8.

2.    Plaintiff's Constitutional Claim Lacks Merit

But even if Plaintiff's Complaint was rule compliant, his Constitutional claim lacks

substantive merit.  Removal of the Commissioner is governed by 42 U.S.C. § 902(a)(3) which provides that the Commissioner may only be removed from office "pursuant to a finding by the President of neglect of duty, malfeasance in office."  *Id*.  The parties agree that two recent United States Supreme Court cases cast doubt on the constitutionality of that provision.

In *Seila Law LLC v. Consumer Financial Protection Bureau*, the Supreme Court held that a provision that allowed the president to remove the Director of the Consumer Financial Protection Bureau ("CFPB") only for "inefficiency, neglect of duty, or malfeasance of office," 12 U.S.C. § 5491(c)(3), violated the separation of powers doctrine by insulating the director from removal by the President.  140 S.Ct. 2183, 2197 (2020).  In *Collins v. Yellin*, decided one year later, the Supreme Court held that a provision limiting the President to removing the Director of the Federal Housing Finance Agency ("FHFA") only for cause similarly violated the separation of powers doctrine.  141 S.Ct. 1761, 1783 (2021) (holding that "*Seila Law* is all but dispositive").  Plaintiff asserts that like the Directors of the CFPB and the FHFA, the Commissioner of Social Security is a single officer at the head of an administrative agency, and therefore, §902(a)(3)'s attempt to impose any restraints on the President's power to remove the Commissioner also violates the separation of powers doctrine.  The Commissioner agrees. (Doc. 12 at 3) (citing Office of Legal Counsel, U.S. Dep't of Justice, Constitutionality of the Commissioner of Social Security's Tenure Protection, 2021 WL 2981542 (July 8, 2021)).

Plaintiff further asserts that because this removal provision is unconstitutional, any delegations of power by Former Commissioner Saul, including delegations of authority to ALJs or the Appeals Council who determined his benefits claims, were invalid.  The Commissioner contends that Plaintiff's argument fails because the ALJ who determined Plaintiff's claim on November 4, 2020, held office on that date, not because of a delegation of authority from Former

13

Commissioner Saul, but because of a ratification of delegated authority on July 16, 2018,[1] by

Former Acting Commissioner Nancy Berryhill.  (Doc. 12 at 5).  And the Commissioner correctly

notes that an Acting Commissioner is not subject to § 902(a)(3)'s removal provision, and therefore

that provision's constitutionality, or lack thereof, is irrelevant.  *See Collins*, 141 S.Ct. at 1781

(because the FHFA removal restrictions only applied to the Director, "any constitutional defect in

the provisions restricting the removal of a confirmed Director would not have harmed [the

plaintiffs], and they would not be entitled to any relief" from actions of the Acting Director who

enjoyed no such removal protections); *Thomas E. v. Comm'r of Soc. Sec.*, C21-5107-BAT, 2021

WL 5415241, *5 (W.D. Wash. Nov. 19, 2021) (finding no constitutional injury where ALJ's

appointment was ratified by Acting Director Berryhill who, as Acting Director, was not subject to

the removal provision in § 902(a)(3)); *Alice T. v. Comm'r of Soc. Sec.*, 8:21CV14, 2021 WL

5302141, *18 (D. Neb. Nov. 15, 2021) (same); *Boger v. Kijakazi*, No. 1:20-cv-00331-KDB, 2021

WL 5023141, * 3 n.4 (W.D.N.C Oct. 28, 2021) ("Plaintiff's constitutional 'removal restriction'

argument is likely not even applicable to this case because [the ALJ] was appointed by an Acting

Commissioner of Social Security who could be removed from the office at the President's

discretion.") (emphasis in original).

Nevertheless, Plaintiff asserts that the ALJ and the Appeals Council adjudicated his

disability application pursuant to a delegation of authority from Former Director Saul.  (Doc. 11 at

15–16).  The Court need not resolve this factual dispute but finds instead that even if Former

---

[1] In *Lucia*, the Supreme Court found that the United States Security Exchange Commission (SEC) ALJs were "inferior officers" under the Appointments Clause, U.S. Const. art II, § 2, cl. 2, and therefore, had to be appointed by a President, a court, or the head of an agency instead of lower-level staff.  *Lucia v. S.E.C.*, 138 S.Ct. 2044, 2051 (2018).  Although *Lucia* involved ALJs at the SEC, on July 16, 2018, Acting Commissioner Berryhill ratified the appointment of the Social Security Administration's ALJ's and administrative appeals judges who were previously appointed by lower-level staff in response to the ruling in *Lucia*.  See SSR 19-1p, 84 Fed Reg. 9582, (2019).

Director Saul appointed the ALJ and Appeals Council judges[2] who determined Plaintiff's benefits claim, the constitutionality of § 902(a)(3) would not warrant remand for several reasons.

First, even if the removal provision in § 902(a)(3) is unconstitutional, it would not have deprived Former Commissioner Saul of the ability to delegate power to others to decide Plaintiff's benefit claim because of the doctrine of severability. As the Supreme Court noted in *Seila Law*, "'one section of a statute may be repugnant to the Constitution without rendering the whole act void.'" 140 S.Ct. 2208 (quoting *Loeb v. Columbia Township Trustees*, 179 U.S. 472, 490 (1900)). Indeed, even in the absence of a severability clause, when "'confronting a constitutional flaw in a statute, [the Supreme Court tries] to limit the solution to the problem, severing any problematic portions while leaving the remainder intact.'" *Id.* (quoting *Free Enterprise Fund v. Public Co. Accounting Oversight Bd.*, 561 U.S. 477, 508 (2010)). For that reason, in *Seila Law*, the Supreme Court found that the unconstitutional removal provision was severable from the remainder of the CFPB's governing statutes because the CFPB was capable of functioning independently even if the unconstitutional removal provision was stricken. 140 S.Ct. at 2209–10, 2245. Such is the case here. If the removal provision in § 902(a)(3) is stricken, the Social Security Administration would remain fully functional. *Alice A. v. Comm'r of Soc. Sec.*, Case No. C20-5756, 2021 WL 5514434, *6 (W.D. Wash. Nov. 24, 2021) (finding that plaintiff's separation of powers claim failed, in part, because even if § 902(a)(3) was unconstitutional it was severable from the remainder of the statutes governing the Social Security Administration); *Shaun A. v. Comm'r of Soc. Sec.*, Case No. C21-

---

[2] The Undersigned does not accept Plaintiff's assertion in his Reply that the Commissioner waived any defense to his separation of power claim with regards to the Appeals Council by failing to address that claim in the Memorandum in Opposition. (Doc. 17 at 10–12). Plaintiff only cursorily mentioned the Appeals Council in his Statement of Errors (Doc. 11 at 15–16), and again, failed to provide the Commissioner with fair notice of his Constitutional claim in his Complaint (Doc. 4). In any event, the claim lacks merit with regard to the Appeals Council for the same reasons that the claim lacks merit with regard to the ALJ.

5003-SKV, 2021 WL 5446878, *4 (W.D. Wash. Nov. 22, 2021) (same); *John R. v Comm'r of Soc. Sec.*, 2021 WL 5356719, *8 (same).

In addition, even if the removal provision in § 902(a)(3) is unconstitutional, that would not have automatically rendered Former Commissioner Saul's appointment invalid, and thus, it would not have automatically invalidated his actions, including delegating authority to make benefits determinations or ratifying such delegations.  In *Collins*, the Supreme Court found the unconstitutional removal provision did not render the FHFA's appointments invalid, and thus did not automatically void the FHFA's actions under the Director.  141 S.Ct. 1787 ("Although the statute unconstitutionally limits the President's authority to *remove* the confirmed Directors, there was no constitutional defect in the statutorily prescribed method of appointment to that office.  As a result, there is no reason to regard any of the actions taken by the FHFA [that were challenged on appeal] as void.").  Accordingly, infirmities in removal provisions do not automatically void appointments or actions taken by properly appointed officials. *Alice A. v. Comm'r of Soc. Sec.*, 2021 WL 5514434, *6 (finding that '[t]he infirm *removal* provision does not render Commissioner Saul's *appointment* invalid, which in turn does not render the ALJ's disability determination void.") (emphasis in original); *John R. v Comm'r of Soc. Sec.*, 2021 WL 5356719, *8 (finding that the unconstitutional "removal provision does not render the Commissioner's appointment invalid, and thus does not automatically void the SSA's actions under the Commissioner").

Instead, to obtain reversal of an agency decision, a plaintiff must show "compensable harm" flowing from an unconstitutional removal clause.  *Collins*, 141 S.Ct. 1788–89 (remanding for further proceedings to determine whether compensable harm to Plaintiff occurred due to the President's inability to remove a Director of the FHFA except for cause).  Here, Plaintiff makes no such showing.  Plaintiff asserts that his injuries flow from an illegitimate delegation of power, that

16

his harm involves "government actors exercising power which they did not lawfully possess," and that therefore, his harm should be presumed.  (Doc. 17 at 16–18).  In so doing, Plaintiff appears to conflate issues that might have presumably flowed from the unconstitutional *appointment* of Former Director Saul with a provision allowing for his unconstitutional *removal*.  As explained above, however, appointments are not nullified by an unconstitutional removal provision.  Nor are actions taken by a properly appointed official.

In short, Plaintiff has not pointed to a connection between any unconstitutional limit on Former Director Saul's removal and the ALJ's determination denying his benefits.  *See also Decker Coal Co. v. Pehringer*, 8 F.4th 1123, 1138 (9th Cir. 2021) (finding that "there is no link between the ALJ's decision awarding benefits and the allegedly unconstitutional removal provisions. And nothing commands us to vacate the decisions below on that ground.").  Nor is it likely that Plaintiff could do so, given that any particular ALJ or Appeals Council decision would not concern the President.  *Cf. Collins*, 141 S.Ct. at 1802 (Kagan, J. concurring) ("The SSA has a single head with for-cause removal protection . . . But . . . I doubt the mass of SSA decisions—which would not concern the President at all—would need to be undone . . . .  When an agency decision would not capture a President's attention, his removal authority could not make a difference.").

For all these reasons, the Undersigned finds that Plaintiff's separation of powers claim lacks merit.  Accordingly, the Undersigned does not reach the Commissioner's alternative arguments including harmless error, de facto officer, the rule of necessity, and other prudential considerations.

## IV.  CONCLUSION

Based on the foregoing, it is **RECOMMENDED** that the Court **OVERRULE** Plaintiff's Statement of Errors (Doc. 11) and **AFFIRM** the Commissioner's decision.

17

## V.        PROCEDURE ON OBJECTIONS

If any party objects to this Report and Recommendation, that party may, within fourteen (14) days of the date of this Report, file and serve on all parties written objections to those specific proposed finding or recommendations to which objection is made, together with supporting authority for the objection(s).  A District Judge of this Court shall make a de novo determination of those portions of the Report or specific proposed findings or recommendations to which objection is made.  Upon proper objection, a District Judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the Magistrate Judge with instructions.  28 U.S.C. § 636(b)(1).

The parties are specifically advised that failure to object to the Report and Recommendation will result in a waiver of the right to have the district judge review the Report and Recommendation de novo, and also operates as a waiver of the right to appeal the decision of the District Court adopting the Report and Recommendation.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

IT IS SO ORDERED.


Date: March 17, 2022                                        /s/ Kimberly A. Jolson
                                                            KIMBERLY A. JOLSON
                                                            UNITED STATES MAGISTRATE JUDGE